**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **TRIPLE D GEAR, LLC,** | |
| **Plaintiff,** | **No. 3:23-CV-2396-L** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **SOUTHERN METHODIST UNIVERSITY,** | |
| **Defendants.** | |

**SOUTHERN METHODIST UNIVERSITY'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM**

Defendant Southern Methodist University ("SMU" or "Defendant") files this Answer, Affirmative Defenses, and Counterclaim ("Answer") to Plaintiff TRIPLE D GEAR LLC's ("Plaintiff or "TRIPLE D") Complaint ("Complaint"). The numbered paragraphs in this Answer correspond to the like-numbered paragraphs of the Complaint, to the extent applicable. SMU denies the allegations and characterizations in the Complaint unless expressly admitted in the following paragraphs. Any factual allegation below is admitted only as to the specific admitted facts, not as to any purported conclusions, characterizations, implications, or speculations that may arguably follow from the admitted facts. SMU denies that TRIPLE D is entitled to the relief requested or any other.

## PARTIES

1.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 1 of Plaintiff's Complaint, and therefore denies them.

2.      Admitted.

1

## JURISDICTION

3.      SMU admits that Plaintiff purports to bring an action at law and in equity alleging trademark infringement under the Lanham Act, 15 U.S.C. § 1114, but denies that there is any basis for Plaintiff's claims and denies that Plaintiff is entitled any relief sought in the Complaint.

4.      Paragraph 4 of Plaintiff's Complaint contains conclusions of law to which no response is required. To the extent a response is required, SMU admits that Plaintiff purports to bring an action over which the court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1331 and 1338(a), but denies that this action arises under 28 U.S.C. § 1338(b). SMU denies that there is any basis for Plaintiff's claims and denies that Plaintiff is entitled any relief sought in the Complaint.

5.      Paragraph 5 contains legal conclusions to which no answer is required. To the extent that an answer is required, SMU admits that it is subject to this Court's jurisdiction in this action, as it resides in this district. SMU denies that it has committed or is committing any infringing act in this district or any other district, or the state of Texas or any other state, and therefore denies the remaining allegations of Paragraph 5.

## VENUE

6.      Paragraph 6 contains legal conclusions to which no answer is required. To the extent that an answer is required, SMU admits that venue is proper in this district in this action. SMU denies that there is any basis for Plaintiff's claims and denies that Plaintiff is entitled any relief sought in the Complaint. SMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6 of Plaintiff's Complaint, and therefore denies them.

## BACKGROUND

7.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 7 of Plaintiff's Complaint, and therefore denies them.

8.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 8 of Plaintiff's Complaint, and therefore denies them.

9.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 9 of Plaintiff's Complaint, and therefore denies them.

10.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 10 of Plaintiff's Complaint, and therefore denies them.

11.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 11 of Plaintiff's Complaint, and therefore denies them.

## THE MARKS-IN-SUIT

12.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 12 of Plaintiff's Complaint, and therefore denies them.

13.      SMU lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of Plaintiff's Complaint, and therefore denies them.

14.      SMU admits only that Plaintiff is listed in the USPTO's online database as the record owner of Reg. Nos. 4586688, 6141994, and 7177134, but denies that Plaintiff has exclusive, propriety rights in those trademarks. SMU denies the remaining allegations of Paragraph 14 of Plaintiff's Complaint.

15.      SMU admits that a Section 15 declaration regarding Registration No. 4586688 was accepted by the U.S. Patent and Trademark Office but denies that the registration is in fact

incontestable as the registration was obtained by fraud and the Section 15 Declaration was fraudulent.

## SMU'S [ALLEGED] INFRINGING ACTS

16.     Denied.

17.     Denied.

18.     Denied.

19.     SMU admits it promotes and sells SMU-branded apparel in the SMU bookstore and on the SMU Mustangs website. SMU lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 19 of Plaintiff's Complaint, and therefore denies them.

20.     Denied.

## COUNT I

## [ALLEGED] INFRINGEMENT OF A REGISTERED TRADEMARK

## UNDER 15 U.S.C. § 1114

21.     SMU incorporates its responses to each and every allegation contained in the paragraphs above as though fully set forth herein.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Denied.

26.     Denied.

## PRAYER FOR RELIEF

SMU admits that Plaintiff purports to seek the relief contained in Plaintiff's Prayer for Relief but denies that Plaintiff is entitled to any relief and denies all the allegations contained in Paragraphs (A)-(E) of Plaintiff's Prayer for Relief. SMU denies that Plaintiff is entitled to any damages, profits, costs, fees, interest, or any other relief, general or special, at law or in equity. SMU requests the Court deny all relief to Plaintiff and enter judgment in favor of SMU on all claims and award SMU its costs and reasonable attorneys' fees and any further relief as the Court may deem appropriate. To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, SMU denies them.

## JURY DEMAND

SMU is not required to provide a response to TRIPLE D's request for a trial by jury.

## AFFIRMATIVE DEFENSES

SMU alleges the following affirmative defenses to Plaintiff's Complaint as set forth below. By alleging these defenses, SMU does not agree or concede that it bears the burden of proof or the burden of persuasion on any of these issues, either in whole or in part. SMU reserves the right to amend its Answer to add additional defenses consistent with the facts discovered over the course of this litigation.

## FIRST AFFIRMATIVE DEFENSE
### (Equitable Defenses)

Plaintiff's claims against SMU are barred in whole or in part by one or more of the equitable doctrines of acquiescence, estoppel, waiver, and unclean hands at least because Plaintiff (1) has been on notice of SMU's use of the marks at issue for years and has coexisted with SMU in the marketplace for several years, thereby acquiescing to such use and waiving any alleged right to bring the claims in this action; (2) has improperly alleged exclusive trademark rights despite

5

being on notice of the City of Dallas's longstanding use of the City of Dallas Logo, upon which Plaintiff's Triple D Marks are self-admittedly copied and used; and (3) has fraudulently obtained registration of the trademarks contained in Registration Nos. 4586688 and 6141994.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches at least because Plaintiff has been on notice of SMU's use of the marks at issue for years and has coexisted with SMU in the marketplace for over four and a half years before filing this action.

## THIRD AFFIRMATIVE DEFENSE
### (Jus Tertii)

Plaintiff's claims are barred by the doctrine of Jus Tertii at least because Plaintiff has no rights in the Triple D Marks as the Triple D Marks are themselves infringements of long-standing trademarks belonging to the City of Dallas.

## FOURTH AFFIRMATIVE DEFENSE
### (No Incontestability)

Plaintiff's Reg. No. 4586688 is not entitled to incontestable status as the Section 15 Declaration submitted by Plaintiff was fraudulent.

## FIFTH AFFIRMATIVE DEFENSE
### (Descriptiveness)

Plaintiff's alleged trademark TRIPLE D is geographically descriptive of goods emanating from or referring to the City of Dallas, and therefore Plaintiff has no enforceable rights in TRIPLE D.

## SIXTH AFFIRMATIVE DEFENSE
### (Fair Use)

SMU's use of the words TRIPLE D to identify merchandise that bears the well-known logo of the City of Dallas that consists of a D comprised of three lines is a fair and descriptive use.

## RESERVATION OF ADDITIONAL DEFENSES

SMU reserves any and all additional defenses available under Title 15 of the United States Code, the rules, regulations, or laws related thereto, the Federal Rules of Civil Procedure, the Rules of this Court, and/or otherwise in law or equity, now existing or later arising, as may be discovered.

## COUNTERCLAIM

Counterclaimant Southern Methodist University ("SMU" or "Counterclaimant") by and through its undersigned counsel, brings this action against Counterclaim-Defendant TRIPLE D GEAR LLC ("Counterclaim-Defendant" or "Triple D Gear"), and alleges as follows:

## PARTIES

1.      SMU is a non-member nonprofit corporation established pursuant to the Texas Business Organization Code, with its principal place of business at Perkins Administration Building, Suite 130, 6425 Boaz Lane, Dallas, Texas 75205.

2.      As represented to the U.S. Patent and Trademark Office ("USPTO"), Counterclaim-Defendant Triple D Gear is a limited liability company organized under the laws of Texas with an address of 503 N. Interurban Street, Richardson, Texas 75081.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over the counterclaim pursuant to Section 14(3) of the Lanham Act, 15 U.S.C. § 1064 (cancellation of registration), and 15 U.S.C. Code § 1119 (power of the court over registration).

4.      The Court also has supplemental jurisdiction over the counterclaim pursuant to Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a) because the counterclaim is so related to the federal claims that it forms part of the same case or controversy.

5.      The Court has personal jurisdiction over Counterclaim-Defendant Triple D Gear at least because Counterclaim-Defendant has submitted to the Court's personal jurisdiction by filing the Complaint in this case.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and the doctrine of pendent venue. Further, Counterclaim-Defendant has waived any challenge to venue by filing the Complaint in this Court.

## FACTS

### The City of Dallas and its Marks

7.      Dallas, Texas one of the largest and most famous cities in the United States.

8.      On information and belief, in 1972, the City of Dallas (the "City") adopted the following logo as a trademark and service mark for the services rendered by the City for use in marketing and informational materials and for use on promotional merchandise such as t-shirts, bags, and other goods:



(the "City Logo")

9.      On information and belief, for more than fifty years, the City Logo has been used extensively by the City of Dallas in connection with numerous goods and services that emanate from the City.

10.     Due in part to the use of three concentric "Ds" in the City Logo, "Triple D" has come to be a nickname for the City of Dallas. Indeed, Counterclaim-Defendant's predecessor in

interest alleged – and obtained a Texas state district court judgment finding – that, "'Triple D' is a well-recognized nickname for the City of Dallas, Texas."[1]

11.      The City Logo has come to be associated in the minds of consumers with the City of Dallas as a symbol of City-originated, sponsored, or affiliated goods and services.

<u>SMU's Partnership with The City of Dallas</u>

12.      SMU is a nationally ranked private university located near the heart of Dallas, Texas. In addition to its distinguished center for global research and liberal arts tradition, SMU is also known for its Mustangs football program.

13.      In 2019, the SMU football program actively campaigned to brand itself as "Dallas's football team"[2] and boost its local footprint in the Dallas area. These efforts included highlighting SMU Mustangs players with Dallas area roots on local billboards and recruiting Dallas natives for coaching positions and players.

14.      Part of SMU's branding campaign to better connect and associate SMU with the City of Dallas was partnering with the City to design a new "Dallas" football jersey. The jerseys featured "Dallas" prominently on the front of the players' shirts in a font that paid homage to the retro Dallas Texans logo, as shown below:

---

[1] *Youssef v. Jackson*, No. DC 13-01632 in the 101st Judicial District of Dallas County, Texas (May 22, 2013). For the Court's convenience, a true and correct copy of this judgment is attached as **Exhibit 1**.
[2] See https://www.dallasnews.com/sports/smu-mustangs/2019/09/10/an-inside-look-at-how-smu-created-its-new-dallas-uniform-and-kept-it-secret-for-months/.



(Copyright: Smiley N. Pool / Staff Photographer at the Dallas Morning News).

15.     The new jerseys also included new helmets bearing a new logo, the "Triple-D SMU Logo", which is co-owned by SMU and the City of Dallas. The Triple-D SMU Logo includes the SMU Peruna icon, the official Mustang graphic, appearing in the middle of the City Logo in place of the stylized oak leaf.



(Copyright: Smiley N. Pool / Staff Photographer at the Dallas Morning News).

16.     SMU is authorized to use the City Logo pursuant to a licensing agreement with the City of Dallas that allows it to use the Triple-D SMU logo in connection with SMU apparel and the football team's helmets.

17.     As part of SMU's agreement with the City, SMU is not permitted to profit from its use of the Triple-D SMU logo.

<u>The Copied Triple D Gear Logos: "Basically, we just took the City of Dallas Logo."</u>

18.     On information and belief, in or around 2007, Ahmed Youssef[3] ("Youssef") and Arturo Sanchez ("Sanchez") purportedly began doing business as co-owners of Triple D Gear.

19.     On information and belief, upon establishing their partnership, Youssef and Sanchez allegedly began using a mark that was a clear copy of the City Logo:



("Ghost Logo").

20.     The only difference between the Ghost Logo and the City Logo is the absence of the stylized oak leaf that is part of the City Logo.

21.     On information and belief, at some point in or after 2007 Triple D Gear began using a different variation on the City Logo:

---

[3] Youssef was the original owner of U.S. Registration No. 4586688 and later assigned it to Counterclaim-Defendant. Youssef was the Manager named in Counterclaim-Defendant's Certificate of Formation and reportedly left the business sometime between 2017 and 2019. Sanchez remains the sole owner of Counterclaim-Defendant and is its CEO.



("Tilted Star Logo").

22.     The only differences between the City Logo and the Tilted Star Logo are (i) the stylized oak leaf in the City Logo was replaced by a tilted star; and (ii) the open ends of the "Ds" are rounded in the Tilted Star Logo. Otherwise, the logos are virtually identical.

23.     There can be little doubt from a simple review of the Ghost Logo and the Tilted Star Logo that they were copied from the City Logo. Further, Sanchez (the current sole owner of Counterclaim-Defendant) admitted on live television that he copied the City Logo.

24.     On or about December 17, 2018, during a television appearance on Good Morning Texas on local Dallas channel WFAA, an interviewer commented to Sanchez and Youssef, "Now, the logo is the D, the Dallas D. Now, it looks very familiar. It looks like the City D..." To which Sanchez replied, "Basically, we just took the City of Dallas Logo and we just put a star in it and tilted it."[4]

25.     With regard to the Ghost Logo, Counterclaim-Defendant similarly "just took the City of Dallas Logo" but did not even bother to "just put a star [or anything else] in it."

---

[4] Available at https://www.wfaa.com/video/entertainment/television/programs/good-morning-texas/show-off-your-love-for-dallas-with-triple-d-gear/287-8380002

The Challenged Registrations

**Registration No. 4586688 for the Tilted Star Logo**

26.     On information and belief, on February 8, 2012, Ahmed Youssef, DBA Triple D Gear, filed U.S. Trademark Application No. 85537432 with the United States Patent and Trademark Office ("USPTO") to register the Tilted Star Logo in connection with "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms" in International Class 25.

27.     Youssef, via his attorney of record, declared under penalty of perjury that "to the best of [his] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive."

28.     This declaration was false, as Youssef was well aware that the Tilted Star Logo had been copied from the City Logo, and that Counterclaim-Defendant's use of the Tilted Star Logo was likely to deceive consumers that the City of Dallas endorsed, approved, or sanctioned Counterclaim-Defendant's use.

29.     Through his attorney, Youssef declared under penalty of perjury that he, as the sole individual applicant, was "the owner of the trademark/service mark sought to be registered."

30.     Sanchez has subsequently testified under oath that he and Youssef were joint proprietors of Triple D Gear from its inception. If Sanchez's testimony is to be believed, Youssef's declaration was false and Youssef and Sanchez were joint owners of the Tilted Star Logo as of February 8, 2012.

31.     A trademark application must name and set forth the citizenship of each joint applicant. 37 C.F.R. § 2.32(a)(2). The application for the Tilted Star Logo failed to identify Sanchez as a joint applicant with Youssef. Accordingly, Application No. 85537432 was void *ab initio*. 37 C.F.R. § 2.71(d).

32.     On May 21, 2012, Youssef's application for the Tilted Star Logo was refused registration under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), because of a likelihood of confusion with the mark in U.S. Registration No. 4048819, shown below:



33.     In order to overcome the refusal, on September 9, 2012, Youssef filed Cancellation No. 92055839 against the owner of the cited registration, Freddie Jackson dba Triple D Clothing Co., alleging, *inter alia*, that "Petitioner [Ahmed Youssef] and his associate Arturo Sanchez designed and used their mark in 2007."

34.     On February 11, 2013, Youssef filed an Original Petition for Declaratory Judgment in the 101st Judicial District Court of Dallas County, Texas seeking, *inter alia*, a declaration that Freddie Jackson had no rights in the registered logo or in the word mark "Triple D." Youssef again falsely alleged that he was the sole owner of the Tilted Star Logo.

35.     The Texas district court granted summary judgment, finding that, as between the parties, "Plaintiff Ahmed Youssef is awarded all common law rights of ownership of Plaintiff's *Leaning Star Triple D mark*, and a judicial determination of prior use of his Leaning Star Triple D

mark as it relates to any dispute between Plaintiff Ahmed Youssef's *Leaning Star Triple D* mark and Defendant Freddie Jackson's *Stylized D* mark." (emphasis in original).[5]

36.     After the Trademark Trial & Appeal Board was notified of the Texas state court's ruling, the Commissioner of Trademarks cancelled Freddie Jackson's registration.

37.     U.S. Trademark Registration No. 4586688 for the Tilted Star Logo was issued to Ahmed Youssef, DBA Triple D Gear, on August 19, 2014 for "Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms."

38.     On information and belief, a Certificate of Formation for Triple D Gear, LLC was filed with the Texas Secretary of State on February 8, 2012, the same day Youssef filed the application for the Tilted Star Logo. On September 17, 2014, Youssef assigned "one hundred percent (100%) interest in Assignor's share of trademark in the registered Word Mark 'D'" to Counterclaim-Defendant. The assignment was recorded with the Assignment Branch of the USPTO on November 17, 2014.

39.     On February 19, 2021, Counterclaim-Defendant filed a Combined Declaration of Use and Incontestability in connection with Reg. No. 4586688 under Sections 8 & 15, alleging that "the mark is in use in commerce on or in connection with **all** of the goods…listed in the existing registration for this specific class: Athletic apparel, namely, shirts, pants, jackets, footwear, hats and caps, athletic uniforms" (emphasis in original). Counterclaim-Defendant verified this assertion in a declaration under penalty of perjury personally signed by Sanchez. Counterclaim-Defendant's declaration was false, as Counterclaim-Defendant had never used the mark on or in connection with footwear or athletic uniforms.

---

[5] See **Exhibit 1** at 4.

40.    Registration No. 4586688 is void *ab initio* for failure to correctly identify the joint applicants, and this is an incurable error. 37 C.F.R. § 2.71(d).

41.    Registration No. 4586688 was obtained by fraud. Ahmed Youssef falsely represented himself – to the USPTO Trademark Examination Branch, to the Trademark Trial & Appeal Board, and to the Texas district court – as the sole owner of the mark and that no other person had the right to use a confusingly similar mark, when he knew that the mark was a copy of the City Logo.

42.    In addition, on information and belief, both Youssef and Sanchez made false declarations that the Tilted Star Logo was used on or in connection with footwear and athletic uniforms when they never had been. It was not until the City filed a Petition for Cancellation against Registration No. 6141994 for the Ghost Logo and sought discovery verifying the goods upon which Counterclaim-Defendant's marks were used did Counterclaim-Defendant attempt to amend the registration under Section 7 of the Trademark Act.

### Registration No. 6141994 for the Ghost Logo

43.    On March 27, 2020, Counterclaim-Defendant filed U.S. Trademark Application No. 88850773 with the United States Patent and Trademark Office to register the Ghost Logo on and in connection with "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing" in International Class 25.

44.    On information and belief, Counterclaim-Defendant falsely declared in its application that it had used the Ghost Logo in interstate commerce in connection with all of the

claimed goods since at least as early as 2007, but subsequently made conflicting statements under oath about when it first used the Ghost Logo.

45.     Counterclaim-Defendant's declaration that the Ghost Logo "was in use in commerce as of the filing date of the application on or in connection with the goods/services in the application" when filing Application No. 88850773 was made under oath. That declaration was false, and Counterclaim-Defendant knew that it was false. Counterclaim-Defendant has subsequently admitted in its corporate representative deposition that the Ghost Logo has never been used on or in connection with pants, footwear, jackets, jerseys, sweaters, tank tops, swimwear, underwear, shorts, socks, jeans, leggings, robes, ties, coats, polo shirts, suits, footwear, or bottoms as clothing.

46.     Counterclaim-Defendant also declared under penalty of perjury that "to the best of [its] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." This declaration was false, and Counterclaim-Defendant knew that it was false. Counterclaim-Defendant knew the Ghost Logo was an imitation of the City Logo and that Counterclaim-Defendant's use of the Ghost Logo was likely to deceive consumers that the City of Dallas endorsed, approved, or sanctioned Counterclaim-Defendant's use.

47.     U.S. Trademark Registration No. 6141994 for the Ghost Logo was issued on September 1, 2020 for "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts;

Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing."

48.     The mark shown in the Registration No. 6141994 was knowingly selected to trade on the goodwill of the well-known City Logo.

49.      The mark shown in the Registration No. 6141994 is confusingly similar to the City Logo and creates a false affiliation between Counterclaim-Defendant and the City of Dallas.

50.     Registration No. 6141994 was obtained by fraud. Counterclaim-Defendant made numerous false declarations in the application and prosecution of the Registration. The USPTO relied on those representations when it granted Registration No. 6141994.

**Registration No. 7177134 for TRIPLE D**

51.     On June 15, 2020, Counterclaim-Defendant filed U.S. Trademark Application No. 90980326 for the mark TRIPLE D in connection with, *inter alia*, "Shirts; Hats; Headwear; Beanies; Pants; Footwear; Jackets; Jerseys; Sweaters; T Shirts; Long Sleeve Shirts; Short Sleeve Shirts; Tank Tops; Swimwear; Sweatshirts; Hooded Sweatshirts; Underwear; Shorts; Socks; Jeans; Leggings; Robes; Ties; Coats; Polo Shirts; Suits; Footwear; Tops as clothing; Bottoms as clothing" on an intent-to-use basis.

52.     Counterclaim-Defendant and its current and former representatives have repeatedly stated and argued in administrative and state court filings that "Triple D" is a reference to the City of Dallas, Texas.

53.     Previously, Youssef filed a motion for summary judgment in a Texas state court case and submitted an affidavit in which he testified that:

> We call the mark the Triple D Logo, as "Triple D" is the well known nickname for the City of Dallas. There is no dispute that the term "Triple D" means Dallas. All you have to say is "Triple D" and

18

practically anybody in our targeted purchasing public knows and understands that you are talking about Dallas, Texas.[6]

54.     On May 22, 2013, the Texas State 101st Judicial District Court issued a Final Ruling in Cause Number 13 – 01632, styled *Ahmed Youssef v. Freddie Jackson* in which it stated, in part, "*The Court finds* that the term 'TRIPLE D' is a well recognized nickname for the City of Dallas, TX." The state court also stated "*The Court finds* that the Dallas County Clerk Records reflect over 100 Dallas business listings as 'Triple D' dating back to as early as 1966."

55.     TRIPLE D is widely known as a nickname for the City of Dallas.

56.     TRIPLE D is geographically descriptive of products or services that emanate from or refer to the city of Dallas, TX.

57.     Section 2(e)(2) of the Trademark Act, 15 U.S.C. §1052(e)(2), prohibits registration on the Principal Register of a mark that is primarily geographically descriptive of the goods or services named in the application.

58.     Counterclaim-Defendant is a Texas company, with a principal place of business in Dallas County.

59.     On September 26, 2023, the USPTO issued Reg. No. 7177134 for the mark TRIPLE D.

60.     The USPTO should not have registered Reg. No. 7177134 as the mark is primarily geographically descriptive of Counterclaim-Defendant and/or Counterclaim-Defendant's goods.

---

[6] A true and correct copy of this affidavit is attached as Exhibit 2.

## COUNT I
### Cancellation of Reg. No. 4586688

1.      SMU repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

2.      The application for the Tilted Star Logo failed to identify Sanchez as a joint applicant with Youssef, and therefore Application No. 85537432 was void *ab initio* under 37 C.F.R. § 2.71(d); therefore Reg. No. 4048819 should never have issued.

3.      Counterclaim-Defendant made false, material representations of fact to the USPTO in connection with the application to register the Tilted Star Logo, which it knew to be false and/or misleading.

4.      When Counterclaim-Defendant executed the declaration in support of the Tilted Star Logo, Counterclaim-Defendant knew of the City of Dallas's prior and ongoing use of the City Logo in commerce.

5.      Counterclaim-Defendant intended to deceive, and did, in fact, deceive, the USPTO by declaring under penalty of perjury in the Tilted Star Logo application that "no other person has the right to use the mark in commerce."

6.      Counterclaim-Defendant committed fraud during the prosecution of the application for the Tilted Star Logo by attesting that "no other person has the right to use the mark[s] in commerce" when, at the time the declaration was signed, Counterclaim-Defendant knew that the statements were false inasmuch as Counterclaim-Defendant knew that the City of Dallas had prior use of, control over, and was continuing to use, the City Logo.

7.      The USPTO relied on the knowingly false statements of Counterclaim-Defendant when it granted Reg. No. 4586688.

8.     SMU has been harmed by Counterclaim-Defendant's fraud in obtaining Registration No. 4048819 as the Tilted Star Logo is are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Counterclaim-Defendant with the City of Dallas, or as to the origin, sponsorship, or approval of Counterclaim-Defendant's goods, services, or commercial activities by the City of Dallas, from which SMU has lawfully obtained a license.

9.     SMU has also been harmed by Counterclaim-Defendant's fraud in obtaining Registration No. 4048819 as Counterclaim-Defendant is attempting to assert its fraudulently obtained registration against SMU by the filing of this lawsuit.

10.    Accordingly, Reg. No. 4586688 for the Tilted Star Logo should be cancelled on the ground that Counterclaim-Defendant committed fraud during the prosecution of the Applications to obtain registration of the mark.

11.    Reg. No. 4586688 should also be cancelled for the reason that the application it resulted from was void *ab initio* under 37 C.F.R. § 2.71(d).

## COUNT II
### Cancellation of Reg. No. 6141944

12.    SMU repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

13.    Counterclaim-Defendant made false, material representations of fact to the USPTO in connection with the application to register the Ghost Logo, which it knew to be false and/or misleading.

14.    When Counterclaim-Defendant executed the declaration in support of the Ghost Logo application, Counterclaim-Defendant knew of the City of Dallas's prior and ongoing use of the City Logo in commerce.

15.     Counterclaim-Defendant intended to deceive, and did, in fact, deceive, the USPTO by declaring under penalty of perjury in the Ghost Logo application that "no other person has the right to use the mark in commerce."

16.     Counterclaim-Defendant committed fraud during the prosecution of the application for the Ghost Logo by attesting that "no other person has the right to use the mark[s] in commerce" when, at the time the declaration was signed, Counterclaim-Defendant knew that the statements were false inasmuch as Counterclaim-Defendant knew that the City of Dallas had prior use of, control over, and was continuing to use, the City Logo.

17.     The USPTO relied on the knowingly false statements of Counterclaim-Defendant when it granted Reg. No. 6141994.

18.     SMU has been harmed by Counterclaim-Defendant's fraud in obtaining Registration No. 6141994 as the Ghost Logo is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Counterclaim-Defendant with the City of Dallas, or as to the origin, sponsorship, or approval of Counterclaim-Defendant's goods, services, or commercial activities by the City of Dallas, from which SMU has lawfully obtained a license.

19.     SMU has also been harmed by Counterclaim-Defendant's fraud in obtaining Registration No. 6141994, as Counterclaim-Defendant is attempting to assert its fraudulently obtained registration against SMU by the filing of this lawsuit.

20.     Accordingly, Reg. No. 6141994 for the Ghost Logo should be cancelled on the ground that Counterclaim-Defendant committed fraud during the prosecution of the application to obtain registration of the mark.

## COUNT III
### Cancellation of Reg. No. 7177134

21.     SMU repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

22.     TRIPLE D is geographically descriptive of Dallas, Texas.

23.     Counterclaim-Defendant is a Texas company, with a principal place of business in Dallas County.

24.     TRIPLE D cannot function as a trademark for goods that emanate from or refer to the City of Dallas.

25.     The USPTO wrongfully registered Reg. No. 7177134 as TRIPLE D is geographically descriptive of both Counterclaim-Defendant and its products.

26.     Reg. No. 7177134 should be cancelled.

### PRAYER FOR RELIEF

WHEREFORE, SMU respectfully requests that this Court certify an Order to the Director of the United States Patent and Trademark Office, pursuant to 15 U.S.C. § 1119, to cancel Reg. Nos. 4586688, 6141994, and 7177134.

Dated:  April 26, 2024                    Respectfully submitted,


                                          */s/ Thomas H. Reger II*
                                          Thomas H. Reger II
                                          Texas Bar No. 24032992
                                          FISH & RICHARDSON P.C.
                                          1717 Main Street, Suite 5000
                                          Dallas, Texas 75201
                                          Telephone: (214) 747-5070
                                          Facsimile: (214) 747-2091

                                          Jenifer deWolf Paine (*pro hac vice* forthcoming)
                                          New York Bar No. 2850444
                                          FISH & RICHARDSON P.C.
                                          7 Times Square, 20th Floor
                                          New York, New York 10036
                                          Telephone: (212) 765-5070
                                          Facsimile: (212) 258-2291


                                          **COUNSEL FOR DEFENDANT**
                                          **SOUTHERN METHODIST UNIVERSITY**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing document has

been served on April 26, 2024, to all counsel of record who are deemed to have consented to

electronic service via the Court's CM/ECF system.


*/s/ Thomas H. Reger II*
Thomas H. Reger II